UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMPASS INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY MECHANICAL &<br>ENGINEERING CONTRACTORS, INC.,<br><br>Defendant. | Case No. 14-cv-04295-JD<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Dkt. Nos. 39, 40, 57, 58 |

The main dispute in this diversity action for declaratory judgment is over the trigger of coverage for asbestos injuries under excess coverage policies issued by plaintiff Compass Insurance Company ("Compass"). Dkt. No. 10. Compass contends that its policies require two triggers -- exposure to asbestos and resulting injury -- within the policy period for coverage. Dkt. No. 39. Defendant University Mechanical & Engineering Contractors, Inc. ("UMEC"), which is the defendant in multiple state court cases filed by asbestos victims, argues that asbestos injury alone is enough. Dkt. Nos. 40, 40-1, 58, 58-1. In a related counterclaim, UMEC contends that counterdefendant Transport Insurance Company ("Transport") must indemnify and defend UMEC in other state court asbestos suits under comprehensive general liability policies it issued to UMEC. Dkt. No. 49, 50. Transport denies liability for the same trigger of coverage reasons Compass asserts. Dkt. No. 57.

The parties filed motions and cross-motions for summary judgment on these questions. Compass' and Transport's motions are denied, and UMEC's motions for summary judgment are granted on the coverage trigger issue in Compass' and Transport's policies, and on Transport's duty to defend the underlying suits. To the extent that UMEC seeks a broader declaration of Compass' or Transport's duty to indemnify specific underlying cases, its motions are denied. The

Court sets the policy interpretation rule here and leaves it to the parties to work out how it applies to a specific case.

## BACKGROUND

The material facts are straightforward and undisputed. UMEC is a California corporation in the business of installing plumbing, piping and HVAC systems throughout California. Dkt. No. 58-1 at 6. UMEC is currently defending a number of asbestos cases in California state courts, arising out of its subcontracting work. *Id.*; *see, e.g.*, Dkt. No. 49 ¶¶ 18-47; Dkt. No. 57 at 5-6.

For May 1, 1981 to May 1, 1982, UMEC had a comprehensive general liability ("CGL") policy with Canadian Indemnity Company, and two layers of excess insurance with Compass. Dkt. No. 40-4, Exh. A (Canadian Indemnity Policy No. GLA 458766); Dkt. No. 40-5, Exh. B (first layer excess policy XL066037 (Compass Policy 1)); Dkt. No. 40-6, Exh. C (second layer excess policy XL066038 (Compass Policy 2)). For May 1, 1982 to March 1, 1985, UMEC had CGL policies with Transport. Dkt. No. 57-1 ¶¶ 2-4 (Transport Policy 1 (Dkt. No. 57-2, Exh. A) in effect May 1, 1982 to March 1, 1983, and Transport Policy 2 (Dkt. No. 57-3, Exh. B) in effect March 1, 1983 to March 1, 1985).

The relevant terms of the CGL policies are identical. The policies cover personal injury liability "caused by an occurrence." Dkt. No. 40-4, Exh. A at 14 (Canadian Indemnity Policy)[1]; Dkt. No. 57-2, Exh. A at A-55 (Transport Policy 1); Dkt. No. 57-3, Exh. B at B-10 (Transport Policy 2). An "occurrence" is "an event or continuous or repeated exposure to conditions, which unexpectedly results in injury or damage during the term of this policy." Dkt. No. 40-4, Exh. A at 18 (Canadian Indemnity Policy); Dkt. No. 57-2, Exh. A at A-59 (Transport Policy 1); Dkt. No. 57-3, Exh. B at B-14 (Transport Policy 2). In a section captioned "Policy Period, Territory," the policies state that they apply "only to occurrences which take place during the policy period within the continent of North America or any territories or possessions of the United States of America."

---

[1] Compass' excess layer policies "follow form" with the definition of "occurrence" and "Policy, Period Territory" provisions of the underlying Canadian Indemnity Policy. Dkt. No. 39 at 3-7, 11; Dkt. No. 39-11 ¶¶ 4-8.

Dkt. No. 40-4, Exh. A at 16 (Canadian Indemnity Policy); Dkt. No. 57-2, Exh. A at A-57 (Transport Policy 1); Dkt. No. 57-3, Exh. B at B-12 (Transport Policy 2).

Compass and Transport (together, the "insurers") do not dispute coverage obligations for claims where the asbestos exposure and injury happened during the policy periods. The main dispute here concerns whether they also owe coverage for asbestos injury during the policy period caused by asbestos exposure prior to the period. In the insurers' view, the policies require exposure and injury to have happened within the policy term -- in other words, two triggers for coverage. In UMEC's view, the policies are typical CGL policies in which coverage is triggered by injury regardless of when exposure happened.

## DISCUSSION

### I. STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the terms and conditions of an insurance policy constitute the entire agreement between the parties, its interpretation is essentially a question of law, particularly well-suited for summary judgment." *Evanston Ins. Co. v. Ghillie Suits.com, Inc.*, No. C 08-2099 JF (HRL), 2009 WL 734691, at *3 (N.D. Cal. Mar. 19, 2009) (internal quotation omitted). All reasonable factual inferences are made in favor of the nonmovant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986). But the Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation omitted).

The case comes to the Court on diversity jurisdiction, and so California law governs the interpretation of the policies. *Perkins v. Maryland Cas. Co.*, 388 F. App'x 641, 642 (9th Cir. 2010). Under California law, the insured has the initial burden of showing that "the occurrence forming the basis of its claim is within the basic scope of insurance coverage." *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998). Once an event has been shown to fall within the scope of coverage, the insurer has the burden of showing that an exclusion or limitation applies. *Essex Ins. Co. v. City of Bakersfield*, 154 Cal. App. 4th 696, 705 (2007).

3

1  Insurance policies are contracts, and the tried and true rules of contract law govern their interpretation. *State v. Continental Ins. Co.*, 55 Cal. 4th 186, 194 (2012). "'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.'" *Id.* at 195 (quoting *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992)). "'Such intent is to be inferred, if possible, solely from the written provisions of the contract.'" *Id.* (quoting *AIU Ins. Co. v. Superior Court,* 51 Cal. 3d 807, 822 (1990)). The contractual language governs if it is "clear and explicit." *Id.*; *see also Powerine Oil Co., Inc. v. Super. Ct.*, 37 Cal. 4th 377, 390 (2005) (same).

A policy provision susceptible to "two or more constructions, both of which are reasonable," will be considered ambiguous. *Continental*, 55 Cal. 4th at 195 (quoting *Waller v. Truck Ins. Exch. Inc.*, 11 Cal. 4th 1, 18 (1995)). The policy's language must be "construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Id.* (quoting *Bank of the West*, 2 Cal. 4th at 1265). If language and context do not resolve an ambiguity, the Court construes the ambiguity "against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." *Id.* (internal quotation omitted); *Powerine*, 37 Cal. 4th at 391; *Pennsylvania Gen. Ins. Co. v. Am. Safety Indem. Co.*, 185 Cal. App. 4th 1515, 1526-27 (2010) ("When construing an insurance policy, [the Court] must resolve ambiguities in coverage clauses most broadly in favor of coverage," and "concomitantly must narrowly construe exclusions and limitations on coverage"), *rehearing and review denied*.

## II. TRIGGER OF COVERAGE

The parties' primary disagreement is whether injury alone during the policy period is enough to trigger coverage or whether coverage requires exposure and injury within the policy period. The insurers read the definition of "occurrence" and the "Policy Period, Territory" section together to mean that coverage is triggered only when exposure to asbestos and injury both happen within the policy timeline. In essence, the insurers argue that two triggers within the policy period are necessary before coverage arises.

1    As the plain language of the policies shows, the insurers' interpretation is untenable. The policy words "during the term of this policy" clearly refer to the fact of injury or damage, and not to exposure. The policies state that an "occurrence" is "an event or continuous or repeated exposure to conditions, which unexpectedly results in injury or damage during the term of this policy." Injury or damage is the defining characteristic of an occurrence, and the time limitation of "during the term of this policy" follows and is attached to "injury or damage." By the ordinary meaning of these words, what must "result[] . . . during the term of the policy" is injury or damage. The event or exposure that caused the injury does not also need to happen within the policy period.

That the "Policy Period, Territory" clause says occurrences must happen during the policy period is of no moment. The clause does not define "occurrence" and is, at best, ambiguous in that it does not clearly "limit coverage to those claims in which the causal acts took place during the policy period." *Pennsylvania Gen.*, 185 Cal. App. 4th at 1527 (construing similar policy language). The ambiguity is resolved against the insurers and for the insured in favor of coverage. *Continental*, 55 Cal. 4th at 195.

In addition to foundering on the plain language of the policies, the insurers' interpretation contravenes well-established California law holding that injury is the trigger of coverage in circumstances like the ones here. While "trigger of coverage" is not a term used in the policies, it is, as the California Supreme Court recently reiterated, a "'convenience used to describe that which, under the specific terms of an insurance policy, must happen in the policy period in order for the potential of coverage to arise. The issue is largely one of timing -- what must take place within the policy's effective dates for the potential of coverage to be 'triggered'?" *Continental,* 55 Cal. 4th at 196 (quoting *Montrose Chemical Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 655 n.2 (1995)) (internal quotation marks and emphasis omitted). "Case law has long established that the operative event triggering coverage is the injury. Because occurrence policies (as distinguished from claims-made policies) cover occurrences that result in injury 'during the policy period,' the courts in California and elsewhere have concluded that the policies are invoked, or 'triggered,' when the injury takes place." *Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal.

5

App. 4th 1, 39-40 (1996) (collecting cases); *Pennsylvania Gen.*, 185 Cal. App. 4th at 1526-27 ("time of occurrence," for triggering purposes, "is the time the complaining party was damaged, not the time the wrongful act was committed") (internal quotation omitted).

Consistent with these principles, policy language substantively identical to the words used here has been construed to require a single trigger in the form of injury. In *Remmer v. Glen Falls Indem. Co.*, 140 Cal. App. 2d 84 (1956), the court addressed a CGL policy defining "occurrence" as "an accident, or a continuous or repeated exposure to conditions, which results in injury during the policy period," and providing that coverage "applies only to occurrences during the policy period." *Id.* at 85-86. On the question of trigger, the court held:

> The general rule is that the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party was actually damaged. . . . . This general rule is adopted by the insurance policy here involved because it defines an 'occurrence' insured against as an accident, or a continuous or repeated exposure to conditions, which results in injury in the policy period.

*Id*. at 88.

This remains the law in California. The California Supreme Court has endorsed this holding in the seminal case of *Montrose*, which laid the foundation of California law on trigger of coverage for progressive and continuous injury. *Montrose*, 10 Cal. 4th at 669. The holding fits with perfection the policy language in this case and puts paid to the insurers' double-trigger of coverage theory.

While the policy language and applicable case law are enough to end this dispute, it is also worth noting that the California Supreme Court recently re-affirmed the vitality of the analogous "continuous trigger" rule to "long-tail" injuries like those caused by asbestos. *Continental*, 55 Cal. 4th at 196. Under the "continuous trigger" rule, bodily injury or damage "that is continuous or progressively deteriorating throughout several policy periods" is potentially covered by all the policies in effect during those periods. *Id*. (quoting *Montrose*, 10 Cal. 4th at 655). California courts specifically treat asbestos and other toxic exposure injury as subject to the continuous trigger rule. *Armstrong*, 45 Cal. App. 4th at 63; *Stonelight Tile, Inc. v. California Ins. Guarantee*

6

*Ass'n*, 150 Cal. App. 4th 19, 36 (2007) (applying continuous trigger in dust inhalation case, citing *Montrose* and *Armstrong*). These holdings underscore the primacy of injury, and not exposure, in triggering coverage.

Consequently, under California law, "[t]he timing of the accident, event, or conditions *causing* the bodily injury or property damage, e.g., an insured's negligent act, is largely immaterial to establishing coverage; it can occur before or during the policy period. . . It is only the *effect* -- the occurrence of bodily injury or property damage during the policy period, resulting from a sudden accidental event or the 'continuous or repeated exposure to conditions' -- that triggers potential liability coverage." *Stonelight*, 150 Cal. App. 4th at 36 (quoting *Montrose*, 10 Cal. 4th at 675) (emphasis in original).

None of the cases proffered by the insurers points to a different outcome. They rely most heavily on *London Markets Insurers v. Superior Court*, 146 Cal. App. 4th 648 (2007) ("*LMI*"), but that case is not at all germane here. *LMI* addresses only what "occurrence" means in the context of interpreting a "per occurrence" limit in a policy. *See id.* at 660-61. It says nothing meaningful about the question of double triggers of coverage raised here. In fact, *LMI* recognizes that the "per occurrence" issue is distinct from the question of coverage trigger. "'The *number* of relevant occurrences for the purpose of interpreting the per occurrence limitation of liability is different from the question of *when* the relevant occurrence happens for the purpose of determining if there is coverage at all, or whether coverage should be allocated to a different particular policy period.'" *Id.* at 667 (quoting *Whittaker Corp. v. Allianz Underwriters, Inc.*, 11 Cal. App. 4th 1236, 1242 (1992) (emphasis in original). Another California case decided contemporaneously with *LMI* reached the same holding. *Safeco Ins. Co. of Am. v. Fireman's Fund Ins. Co.*, 148 Cal. App. 4th 620, 637 (2007) ("'[f]or purposes of determining the number of policy limits (or deductibles) available, 'occurrence' focuses on the event or events *causing* the injury. But in determining . . . *which* policy or policies provide coverage [for property damage] -- the focus is on the *timing of the injury or damage*; i.e., whether the injury or damage took place during the policy period'") (quoting Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2006) ¶¶ 7:375, p. 7A-119) (emphasis in original).

7

The insurers' other case citations are equally inapposite. The insurers' reliance on *Flintkote Co. v. General Accident Assurance Co.*, 410 F. Supp. 2d 875 (N.D. Cal. 2006) is misplaced because that case also involved per occurrence coverage limits and not a question of the trigger of coverage. *Id*. at 880. The case appears to appeal to the insurers because it expresses skepticism about *Whittaker's* differential interpretation of "occurrence" in the trigger of coverage and limitation of liability contexts. But since *Flintkote*, California courts have re-affirmed the distinction drawn in *Whittaker*. *See, e.g., Safeco*, 148 Cal. App. 4th at 637; *LMI*, 146 Cal. App. 4th at 667. To the extent *Flintkote* disagrees with *Whittaker*, the Court declines to follow it in light of these reaffirmations.

*Westoil Terminals Co. v. Industrial Indemnity Co.*, 110 Cal. App. 4th 139 (2003), is also off point. The policy there contained a "qualified pollution exclusion" that expressly excluded coverage unless damage was caused by a "sudden, unexpected and unintended discharge, dispersal, release or escape [of contaminants that] takes place during the policy period and causes bodily injury or damage to tangible property during the policy period." *Id*. at 148. This language clearly and unambiguously specifies a temporal quality to the causal event (e.g., the "sudden . . . discharge . . . during the policy period") and the resulting injury (the "injury . . . during the policy period") that is not present in the insurers' policies here.

*City of San Buenaventura v. Insurance Co. of the State of Pennsylvania*, 719 F.3d 1115 (9th Cir. 2013) provides no help to the insurers, either. That case involved a single discrete event that began and ended prior to the policy periods, *id*. at 1117-18, which the court specifically distinguished from the type of ongoing tort addressed in *Montrose* and *Continental*, *id*. at 1119-20, which is also the type of claim at issue here.

Consequently, the Court finds that the plain language of the disputed policies requires only injury or damage within the policy period to trigger coverage. The time of the event or exposure leading to the injury is irrelevant. This finding resolves the main dispute here, and eliminates any need to address the parties' ancillary disagreements on other issues, including the effect of "Completed Operations" coverage.

### III. TRANSPORT'S DUTY TO DEFEND

An insurer's duty to defend its insured against a lawsuit filed by a third party is broader than its duty to indemnify. *Pacatte Const. Co. v. Amco Ins. Co.*, No. 12-cv-1472-JST, 2013 WL 2153675, at *4 (N.D. Cal. May 16, 2013) (citing *Buss v. Superior Court of Los Angeles County*, 16 Cal. 4th 35, 46 (1997)). A liability insurer "owes a broad duty to defend its insured against claims that create a potential for indemnity." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993) (internal quotation omitted). The duty to defend is broader than the duty to indemnify and may exist even when coverage is in doubt. *Id*. "The duty to defend arises on tender of defense and continues until the underlying lawsuit is concluded or until the insurer establishes, by reference to undisputed facts, the absence of any potential for coverage." *El-Com Hardware, Inc. v. Fireman's Fund Ins. Co.*, 92 Cal. App. 4th 205, 213 (2001) (citing *Montrose*, 6 Cal. 4th at 295, 300). To determine whether the duty to defend is present, a court compares "the allegations of the third party complaint with the terms of the policy." *Id*. at 212. Once the duty to defend attaches, "the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993).

Transport has a duty to defend the underlying *Galvan* and *Mulvany-Miller* cases in state court. *See* Dkt. No. 57 at 5-6. To be excused from this duty, Transport would have had to establish that, "'as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage.'" *Pacatte*, 2013 WL 2153675, at *4 (quoting *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005)). The *Galvan* complaint alleges UMEC-related asbestos exposure in the periods 8/9/1972 to 9/9/1972, 1/1976, 12/1976 to 3/1977, and 1980. Dkt. No. 57-1, Ex. D ¶ 35. The *Mulvanny Miller* complaint alleges UMEC-related exposure to asbestos during the "Late 1960's." Dkt No. 57-1, Ex. I at 4. Transport does not dispute that exposure to asbestos at these times establishes progressive and continuous injury during the during the relevant policy period of May 1, 1982 through March 1, 1985. *See, e.g.*, Dkt. No. 57 at 5-6; Dkt. No. 63 at 12; Dkt. No. 61 at 18. Instead, its argument rests entirely on the lack of alleged exposure during the policy period. Dkt. No. 57 at 5-6. Consequently, the Court's determination that exposure during

1 the policy is not required to trigger the policy leaves Transport without any argument against its
2 duty to defend.

## CONCLUSION

Compass's Motion for Summary Judgment (Dkt. No. 39) is denied. Transport's Motion for Partial Summary Judgment (Dkt. No. 57) is denied. UMEC's Motions for Summary Judgment (Dkt. Nos. 40, 58) are granted in its favor on the issue of whether coverage under the policies arises on the single trigger of injury or damage within the policy period, and on Transport's duty to defend in the specified underlying actions.

This order resolves the parties' policy interpretation dispute about trigger of coverage. The Court emphasizes that it is not ordering coverage in any particular underlying case. The parties know the pending cases in detail and are better situated to resolve coverage claims in a manner consistent with this order. In light of that, the Court would like the parties' guidance on what issues, if any, remain outstanding in the case. The parties are directed to file a Joint Case Management Statement by April 5, 2016, advising the Court what they believe remains to be resolved in this case and why the Court should not issue judgment and close this matter.

**IT IS SO ORDERED.**

Dated: March 25, 2016

_____
JAMES DONATO
United States District Judge